Carl LUTES, Appellant,

v.

STATE of Indiana, Appellee.

No. 679S144.

Supreme Court of Indiana.

March 17, 1980.

Harriette Bailey Conn, Public Defender, James G. Holland, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy, Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This is an appeal from a judgment of the Montgomery Circuit Court, denying appellant's petition for post-conviction relief. Appellant Lutes was charged in Montgomery Circuit Court with kidnapping. Pursuant to a plea agreement, Lutes pleaded guilty to the amended charge of commission of a felony while armed, to-wit: rape, in exchange for a dismissal of the kidnapping charge. Lutes was then sentenced to a determinate period of twenty-five years. This term was to be served consecutively with a five-year sentence which had been imposed in Putnam County on a rape charge which arose out of the same incident. No appeal was taken from either judgment.

Appellant's petition for post-conviction relief raises only one issue: whether his conviction and sentence for commission of a felony while armed placed him in jeopardy twice for the same crime, in contravention of article one, section fourteen of the Indiana Constitution and the Fifth Amendment to the United States Constitution. He bas-

es this argument on the fact that when the sentence was imposed, he had already been convicted of and sentenced for rape in Putnam County. This rape was a lesser-included offense of the armed felony charge on which he was sentenced in Montgomery County. *See Hudson v. State*, (1976) 265 Ind. 302, 354 N.E.2d 164.

On June 27, 1977, appellant Lutes observed the victim, F. D., at a public water fountain in Montgomery County. He approached her with a large knife and, by threatening her with the weapon, forced her into his car. He then drove her to a wooded area in Putnam County, where he raped her. F. D., was released in Montgomery County. Appellant was subsequently charged with kidnapping in Montgomery County and rape in Putnam County.

On September 20, 1977, in the Putnam Circuit Court, Lutes entered into a plea agreement with the Putnam County Prosecuting Attorney, in which he pleaded guilty to the rape charge and received a determinate sentence of five years. Sentence was imposed on October 3, 1977. As noted earlier, on December 15, pursuant to a plea agreement with the Montgomery County Prosecuting Attorney, appellant pleaded guilty to a charge of commission of a felony while armed, to-wit: rape, and received a determinate term of twenty-five years. The trial court provided that the twenty-five year term would be served consecutively with the five-year term imposed in Putnam County.

Petitioner's position is that a constitutional right must be willingly and knowingly waived. He contends that because the record does not show that the trial court expressly advised him of his right against double jeopardy, it cannot be said that he waived the right. The State contends that appellant Lutes waived the issue of double jeopardy because he did not raise that question at any time in the trial court.

The evidence presented to the post-conviction hearing judge shows that appellant Lutes was aware that kidnapping carried with it the penalty of life imprisonment. Lutes was very concerned about this penalty and was willing to bargain with the State and plead guilty to a lesser charge in order to avoid a life term. A written plea agreement was thus entered into and filed with the Montgomery Circuit Court. In this agreement, the defendant stated that he was advised of all of his constitutional rights and that he entered into the agreement because the State had committed itself to dismissing the kidnapping charge and accepting a plea of guilty to the lesser charge. Under the original terms of the agreement, appellant would have received a fifteen-year sentence. However, the trial judge stated that he would not accept a plea with a binding fifteen-year term. The court further stated that after hearing the cause submitted to him, he would indicate the term he felt would be appropriate, and if the defendant was dissatisfied with this suggested term, he would have the option to withdraw his guilty plea and stand trial. The parties then came before the court with this understanding and with the terms of the plea agreement complete, except concerning the amount of time to be served.

The trial court examined the plea agreement, heard appellant's guilty plea, and heard *prima facie* evidence to determine that the crime had been committed. The court then accepted the plea of guilty to commission of a felony while armed, to-wit: rape, and sentenced appellant to a term of twenty-five years, to be served consecutively with the five-year term received in Putnam County. The record shows that during the course of this hearing and the subsequent sentencing, the court discussed at length with appellant his plea and the waiver of his constitutional rights which he was effecting by entering this plea. At no time during this hearing was the question of double jeopardy mentioned by anyone. The post-conviction relief court found that appellant was adequately advised of his rights by the trial court at the time of his sentencing, that he entered his guilty plea freely and voluntarily, and that he was represented by competent counsel at the time.

It is, of course, the burden of the defendant to show that his conviction vio-

lated his constitutional right against double jeopardy. *Ford v. State*, (1951) 229 Ind. 516, 98 N.E.2d 655, *cert. denied*, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656. A defendant can waive this right, as well as any other constitutional rights, if he fails to raise it by objection in a timely manner. *Reynolds v. Dowd*, (1953) 232 Ind. 593, 114 N.E.2d 640. *See Dowling v. State*, (1954) 233 Ind. 426, 118 N.E.2d 801; *Irwin v. State*, (1942) 220 Ind. 228, 41 N.E.2d 809. In *Jeffers v. United States*, (1976) 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168, the United States Supreme Court found that the defendant had waived his right to claim a defense of double jeopardy where, by his actions and participation in the proceedings, he tended to invite separate trials on multiple offenses. In that case, the government had moved for a joint trial where one of the charges was an included offense of the other. The defendant opposed this motion. A plurality of the Supreme Court held that he had waived his right to raise the double jeopardy defense in the second trial when he had helped create the situation where he went to trial on the second charge after having been convicted on the first charge.

It is apparent in the case before us that appellant Lutes had an active hand in arranging the disposition of these causes so that he might benefit from the results and not face a life term for kidnapping. He was represented by attorney Brewer in the Putnam County charge, and by attorney Husted in Montgomery County. Husted testified at the post-conviction hearing that Lutes was very much aware of the life term facing him and was very concerned about avoiding it. In addition, the following exchange occurred on cross-examination of Husted:

Q. "To your knowledge, the double jeopardy problem was never discussed directly as such?

A. I would have to assume that it was, I mean I've been in this business a long time but I cannot say and I will not say, that I remember. I do not have it in my notes that I did discuss that with him individually as a separate issue. Of course, as it started,

double jeopardy was not a problem because it was a kidnap in Montgomery County and a rape in Putnam County. As it turned out, it ended up being a plea bargain, then those kinds of questions were really not pertinent to him at that time."

Record at 146–47. Previously, on direct examination, Attorney Husted had testified as follows:

Q. "Alright. Mr. Husted, did you also have a conversation with myself, as prosecutor, about Mr. Lutes' case?

A. Yes, I did, Mr. Siamas.

Q. And did you, in fact, enter into a plea negotiation concerning the Lutes case?

A. Yes, we did, because I recall that was exactly what was done.

Q. Is it a fact that Mr. Lutes was initially charged with kidnapping in this county?

A. Yes, he was charged with kidnapping filed in this court on June 30, 1977.

Q. And is it your understanding that kidnapping under the old law would carry a life sentence?

A. Yes, that was the law.

Q. Were you also aware and was Mr. Lutes made aware that he was also charged in Putnam County with the crime of rape?

A. Yes, absolutely. He had a court appointed attorney down there, Mr. Delbert Brewer, and I conferred with him on many occasions. In fact, the plea bargain that was worked out, I think, really was a plea bargain between Mr. Brewer, myself, Mr. Lutes and the prosecutors of the two different counties.

Record at 139–140.

This testimony summarized very succinctly the purposes behind the procedure used in this case. The plea bargains entered into in both counties were coordinated to result in a total sentence that seemed appropriate to this defendant. The Montgomery County prosecutor was willing to plea bargain

the term down from a life sentence, even though this was a very serious crime, because he did not think a life term for this defendant was appropriate. He had discussed this arrangement with the victim, and she had agreed that it would be reasonable to reduce the sentence to a fixed term. The five-year term imposed in Putnam County was in contemplation of a greater sentence being imposed in Montgomery County for the armed felony charge.

Conversely, the discussion before the trial court in the sentencing hearing in Montgomery County centered around the term to be given in that County, taking into consideration the five-year term previously imposed in Putnam County. Thus, everyone was fully aware of the convictions and sentences in both counties, and all were thinking in terms of adjusting the sentences to arrive at an appropriate total sentence.

The arguments made by counsel in the sentencing hearing in Montgomery County were directed at the term to be given for the armed felony charge in that county and the question of whether to make the sentence run consecutively with the five-year term. For this reason, the trial judge discussed at length his intentions in regard to the term, and gave the defendant the option to withdraw his plea if he felt the sentence was too severe. When the court imposed a twenty-five year term, the defendant did not withdraw his plea and did not object in any way. It is apparent, therefore, that the defendant was well aware of the circumstances facing him and entered into these plea bargains to come out in the best position he could. His attorneys very competently represented him to that end. The State kept its part of the bargain, and the judgment of the trial court required appellant to do nothing more than uphold his part of the bargain. Accordingly, we hold the trial court properly found that appellant waived his right to be protected against double jeopardy when he entered into these agreements. *See Jewell v. State*, (1979) Ind., 397 N.E.2d 946, 948 ("Although a guilty plea is recognized as a conviction it has certain aspects to it which

make it fundamentally different from the usual process when an accused is convicted.") (*quoting Combs v. State*, (1973) 260 Ind. 294, 301–03, 295 N.E.2d 366, 370–71).

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and De-BRULER, JJ., concur.

PRENTICE, J., concurs in result.